WATKINS L. SMITH AND OTHERS v. W. H. STRAHAN.

Where a tract of land is purchased with the separate property of the husband, and the conveyance is taken in the name of the wife, the acts and declarations of the husband before the taking of the conveyance having reference to it, and corresponding with his after acts, evidencing his intention and purpose respecting it, and the subsequent statements of the wife in so far as they conduced to countervail the *prima facie* inference deducible from the fact of taking the deed in her name, are admissible and proper to be submitted to the jury for their consideration upon the question whether the real intention and purpose of taking the deed in the name of the wife was to make a donation or gift of the property to her sole and separate use.

ERROR from Colorado. Tried below before the Hon. James H. Bell.

The plaintiffs brought this suit as the heirs-at-law of Delilah Strahan, deceased, the wife of the defendant, who died in the year 1844, for a partition of a certain tract of four hundred acres of land, which was conveyed by deed, during the coverture, by Patrick and Polly Reels to said Delilah, on the 24th day of February, 1844. The original petition filed by one of the plaintiffs, Watkins L. Smith, on the 12th day of September, 1853, alleged his marriage with Sarah Francis Strahan, the daughter of the defendant and said Delilah, in the year 1846, who died in the year 1849, leaving a son, who also died in the year 1852, and said

Smith claimed in right of his said child, and prayed that the three other children of said Delilah be made defendants, two of whom being minors, appeared by guardian, and answered, joining in the prayer of plaintiff. The adult heir and defendant, Catherine Bailey, afterwards dying, her surviving son, William J. Bailey, by guardian, answered, and joined in plaintiffs' prayer for partition of the land.

The defendant by his answer, and various amended answers, pleaded that the land was purchased by him, and paid for with a negro girl and a horse, his own separate property; that the conveyance to his wife was procured by himself for his own benefit, to be held by her in trust for his use and benefit. Further, that after the death of his wife Delilah, the plaintiff Smith and his wife set up a claim to a portion of the land as their inheritance from said Delilah, and threatened to institute legal proceedings for its recovery, which produced difficulties and ill feelings in his family; to settle which, he gave, on the 20th day of March, 1849, to said Smith and his wife $150, for all their interest in the land as an adjustment of the matter, and they executed to him, in writing, their release in accordance with said contract, which was set forth as a part of the answer. The plaintiff replied, denying the alleged trust, and charged that the conveyance was a gift by the defendant to his wife, and denying that he had any other object in view in causing the conveyance to be taken in the name of his wife, than of making a donation; alleging that the same was made to cheat, wrong and defraud his creditors, and to hinder and delay them in the collection of their debts. He also denied, under oath, the execution of the alleged release, and charged that it was a forgery. The defendant, by further amendment, renewed the allegations as to the trust created as aforesaid, and stated his object to be his bad health at the time, and, in the event of his death, to enable his wife readily to control the title to the land, without being subject to the jurisdiction of the probate court, and thus enable her to remove, in that event, to her native State, and in case he recovered, still to hold the property in trust. He suggested occupation in good faith, and valuable improvements.

In rebuttal of the plaintiff's testimony, the defendant, W. H.

Strahan, introduced as a witness Thomas Brown, who testified that Strahan and his wife moved from Georgia to Eastern Texas in the year 1840, and two years thereafter moved to Colorado county. That W. H. Strahan had been in bad health in Eastern Texas; that shortly before the purchase was made of the land, he told witness that when he bought a place, he intended to have the deed made to his wife, because he did not expect to live long, (his health still being bad) and he wished to arrange it so that his wife could sell it after his death, and move back to Georgia; and desired him, in that event, to take her and the family back; that he did not want the probate court to have anything to do with his property. The plaintiff and co-defendant of W. H. Strahan objected to the testimony as to the declarations of the defendant prior to the execution of the deed to Delilah, because the witness stated, on cross-examination, that he did not know anything about the execution of the deed to Delilah Strahan from Patrick and Polly Reels, and was not present at the time, and did not know when it was executed; and also because Strahan's declarations, as recited, was not evidence to rebut the presumption of a gift to his wife, which objection was overruled.

John Wright, a witness in behalf of the defendant, W. H. Strahan, testified that in the year 1844, when the defendant was sick, (his wife being present,) he spoke of the purchase, and taking the deed in the name of his wife. Witness asked the reason therefor, and whether he was in debt. To which his wife replied, "no; but Mr. Strahan could not be convinced but that he was going to die before long; and that the deed was taken in that way, that she should have no trouble in settling up the estate." The witness recited the remarks then made by Strahan corroborative of the foregoing by his wife; animadverting upon the management of estates by probate courts, and also stating that he had engaged Brown to take his wife and family back to Georgia, in case of his death. The plaintiff and the said co-defendants objected to the declarations of W. H. Strahan, because they were made long after the execution of the deed to his wife; and to the declarations of the wife, because she was not prejudiced by them, having been made in the presence of her husband, and corroborative of his

statements—to do so was consistent with her duty as a wife; and because the declarations of both constituted no rebuttal of the presumption of law that the land was a gift to the wife. The objections were overruled.

The defendant, W. H. Strahan, read in evidence an instrument of sale or release from Watkins L. Smith and Sarah F. Smith, dated 20th day of March, 1849, to W. H. Strahan, of their interest in the tract of land, for the sum of $150.

The plaintiff introduced in rebuttal a lease of an hundred acres of the tract for eight years, and parol evidence to show that the release from himself and his wife referred to his interest under the lease, and not to that derived under the said Delilah Strahan by descent; which fact he had also pleaded. It was proved that the defendant was in debt in Georgia at the time of his departure, and testimony was introduced tending to prove that they have not been settled; and also his declaration to a witness, previous to the purchase, that, "he was going to fix things so that they could not touch his property; that he had enough of security debts to pay, and did not intend to pay any more."

The court charged the jury as follows:

"The general rule of law is, that where one pays for property and has the deed made to another, the person to whom the conveyance is made holds the property in trust for that one who paid for it.

"There are some exceptions to this general rule; and one of them is, where a man purchases property and pays for it with his own means, and has the deed made to his wife; in such case, the presumption is, that he intends the property to be his wife's, and to be held by her as her own property, and not in trust for him.

"In this case, therefore, it being admitted by the pleadings, and in the evidence, that W. H. Strahan purchased the land in controversy, and paid for it with his own means, and that the deed was taken in the name of Delilah Strahan, the wife, the law raises the presumption that W. H. Strahan intended that the land should be a gift to his wife, to be held by her as her own property, and not in trust for him.

"This presumption of the law, however, may be rebutted by

proof, which shows that although the deed was taken in the name of Delilah Strahan, the wife, it was not intended by the husband as a gift to her; but that it was his intention that she should hold the land in trust for him.

"In deciding this question you must remember that the legal presumption exists, that it was Mr. Strahan's intention to make a gift of the land to his wife. You cannot, therefore, from the mere fact that Strahan paid his own means for the land, indulge any presumption as to what his intention was, other than the presumption which the law raises. To find out what his intention was, you must look for evidence beyond the mere facts of the payment of his own means for the land, and the execution of the deed in his wife's name. To ascertain the intention of the parties at the time of the execution of the deed to Mrs. Strahan, it is proper to look to the acts and declarations of the parties at the time of the execution of the deed, and before that time, while the negotiation for the purchase of the land was depending.

"The declarations of W. H. Strahan at the time of the execution of the deed, and during the negotiation for the purchase of the land, are competent testimony both for him and against him, to show what his intention was. His declarations made subsequent to the execution of the deed, are competent evidence against, but not for him.

"The declarations of Mrs. Strahan, made at any time, are competent as evidence showing that she held the land in trust for her husband; but her declarations that the conveyance was not made to defraud creditors, are not competent evidence to disprove the legal presumption that the land was intended by her husband as a gift to her.

"The possession of the land by Strahan, claiming it, and using it as his own, his wife being dead, and his children being minors; and the execution of a lease or mortgage of the land, in which he describes it as his own, are not competent evidence, unsupported by other testimony, to rebut the presumption arising from the execution of the deed in his wife's name—though these circumstances may be considered by you along with other evidence.

"These rules as to the competency of evidence to disprove the

legal presumption that the conveyance was intended as a gift to the wife, will be observed by you in your deliberations, and observing these rules, it is for you to say, upon a consideration of the whole evidence, whether or not W. H. Strahan intended, when the deed was made in his wife's name, that she should hold the land in trust for him.

"If you find from the evidence, that it was his intention that his wife should hold the land in trust for him, you will then have to determine whether or not, this trust was intended or created in good faith.

"If you believe, therefore, from the evidence, that the intention of Strahan, at the time of the execution of the deed to his wife, was that she should hold the land in trust for him in good faith, and not for the purpose of putting his property beyond the reach of his then creditors, you will so find by your verdict; and if you so find, you need find nothing further, because that will dispose of the whole case.

"If you believe, however, that the conveyance was made to Mrs. Strahan with the intention, on the part of W. H. Strahan, to put his property beyond the reach of his then creditors, you will so find by your verdict; and in that case, the law does not permit the trust in favor of W. H. Strahan to arise, but as against him, vests the estate in the land absolutely in the wife.

"If you find that it was W. H. Strahan's intention that the land should be a gift to his wife, or if you find that the conveyance was made to the wife for the purpose of defrauding his then creditors, then the minors, William T. Strahan and Cincinnatti Strahan and the child of Bailey, are entitled to recover against William H. Strahan. But it may not be so with Watkins L. Smith; as far as he is concerned, if you find that the land was intended as a gift to Mrs. Strahan, or that the conveyance was made to her to defraud Strahan's creditors, then you will have to decide whether or not, Watkins L. Smith executed the conveyance to W. H. Strahan, which has been shown to you in evidence. If he did execute it, he is bound by it, and cannot recover. If he did not execute it, then he is entitled to recover, if the minors are so entitled. That is to say, if you believe from the evidence, that

Watkins L. Smith did not execute the paper signed by himself and his wife, and if you believe from the evidence that the land was a gift to the wife, or that the conveyance was made to her to defraud creditors, then Watkins L. Smith and the three minors are entitled to recover against W. H. Strahan.

"If the intention of Strahan at the time of the execution of the deed to his wife, was that the wife should hold the land in trust for him in good faith, and not to defraud creditors, then none of the parties can recover against W. H. Strahan; and if you believe these facts, you may find a verdict in favor of W. H. Strahan against all the other parties."

Verdict, for the defendant, W. H. Strahan, on which the court decreed the title to the land in controversy to be in said Strahan. Motion for a new trial by the plaintiff and the minors, overruled.

*John H. Robson,* for the plaintiffs in error.—One of the exceptions to the doctrine of resulting trusts arises in the case of a purchase by a husband in the name of his wife; the purchase money being paid by him, and the deed taken in her name. (Kingdom v. Bridges, 2 Vern., 67; Christ's Hospital v. Bridges, 2 do., 683; Glaister v. Glaister, 8 Ves., 199; Back v. Andrews, 2 Vern., 120; Rider v. Kidder, 10 Ves., 367; Lorimer v. Lorimer, 10 Ves., 367n; 2 Story's Eq. Ju., 612, § 1202–1205; 2 Sugden on Vend., 397; Jeremy's Eq. Jur., 88; Hill on Trustees, 135; 19 Wend., 414; 11 Paige, 619; 3 Cush., 194–7; 2 Tex. R., 150; 16 Tex. R., ——. We submit, then, that it is clear that the purchase money of the land in controversy having been paid by W. H. Strahan, and the deed having been taken by him in the name of his wife Delilah, the presumption of law arises that it was a gift or advancement to the wife.

This presumption, like most other presumptions, may be rebutted by proof; and hence, an important question naturally presents itself—what character and amount of evidence is necessary to rebut it, and to establish the fact that instead of being a gift to the wife, she was the mere trustee of her husband, and held the land in trust for him and for his benefit? In replying to this question, we say—

1st. That *the facts* adduced in evidence to show either a father's or husband's intention that the son or the wife should hold as trustee in opposition to the presumption of law that a gift or advancement was intended, *must be facts* which took place either antecedently to, or cotemporaneously with, the purchase, so as to form a part of the same transaction. (2 Swanst., 594; 3 Ridg., 106, 177, 194; 2 Beav., 447; 1 Swanst., 17, 19; 1 S. & S., 1; 2 Vern., 19; 2 Vern., 110; 1 My. & K., 511.)

2d. Although the parol declarations of the father or husband, cotemporaneous with the purchase, will be admissible in evidence to rebut the presumption of a gift to the son or the wife, still we say that any declarations made by them subsequently to the purchase, are not admissible for such purpose. (2 Beav., 456; 2 Ch. Ca., 231; 2 Freem., 33; 15 Ves., 51; 3 Ridg., 106; 1 Swanst., 13; 1 N. C. C., 65; 18 Ohio, 418.) Even when the declarations were cotemporaneous with the purchase, it has been said that parol evidence is improper against the legal operation of a deed; and that where such declarations are conflicting or inconsistent, the court will not act upon them. (2 Swanst., 597; 1 Atk., 386; 3 Ridg., 176.) Lord Elden, in the case of Finch v. Finch, (15 Ves., 50,) in speaking of the presumption of a gift to a child says: "This principle of law and presumption ought not to be frittered away by nice refinements;" and in the case of Grey v. Grey, (2 Swanst., 229, 600,) the Lord Chancellor says: "Where a father intends a trust, he ought to see it declared in writing, or *supported by direct proof, and not rest upon construction.*" And again, he says: "When a trust shall be between father and son, contrary to the consideration and operation of law, the same ought to appear upon *very plain* and *coherent* and *binding evidence*, and not by any agreement or inference from the father's continuing in possession and receiving the profits," &c. (Finch, 340.)

3d. We say that it is also a clearly settled principle of law, that if a person purchases land with his own money and takes the conveyance in the name of his wife or child for the purpose of defrauding his creditors, *no trust* will arise for the

benefit of the party thus attempting the fraud. (Proseus v. McIntyre, 5 Barbour's S. Ct., 425–434.) In such a case, the only trust in the land which would result to him, would result to him for the benefit of his creditors. The wife or child (as the case might be) would hold the land as against him and his representatives. (19 Wend., 414; 5 Barbour's S. Ct., 425, 434; 1 Hill's Chancery, 297, 306; 3 Blackford, 115; 1 Dana, 531; 2 Harrington, 225.) If a conveyance be executed for the purpose of defrauding creditors, it can make no difference whether the husband first purchased a tract of land, taking the deed in his own name, and then executing a deed to his wife; or whether, having advanced the purchase money, he had the deed, in the first instance, taken in his wife's name. In either case, the conveyance would be void as to creditors, but binding and conclusive as between the husband and wife. (10 Tex. R., 428; 7 Tex. R., 576.) By applying the law which we have advanced to the facts of the present case, we submit that the three following propositions are fully sustained by the record:

1. That the presumption of law is, that the deed to Delilah Strahan, of the land in controversy, was a gift of the land to her by her husband.

2. That this presumption has not been rebutted by any legal or sufficient evidence that the deed was made to Delilah Strahan, in trust for W. H. Strahan, and for his benefit.

3. That if any other motive actuated W. H. Strahan in having the deed taken in his wife's name, than that of simply making a gift or donation of the land to his wife, the motive was a fraudulent one, and the conveyance was so taken in his wife's name for the purpose of hindering, delaying, or defrauding his creditors in the collection of their debts.

*G. W. Smith*, for the defendant in error.

WHEELER, C. J.—The rulings of the court upon the trial appear to have been in entire conformity to the opinion of this court, when this case was before us on a former appeal. (Smith v.

Strahan, 16 Tex. R., 314; and see Higgins v. Johnson, 20 Tex. R., 389.)

The acts and declarations of the husband before the taking of the conveyance, having reference to it, and corresponding with his after acts, evidencing his intention and purpose respecting it, and the subsequent statements of the wife, in so far as they conduced to countervail the *prima facie* inference deducible from the fact of taking the deed in her name, were admissible and proper to be submitted to the jury for their consideration, in coming to a conclusion upon the question whether the real intention and purpose of taking the deed in the name of the wife was to make a donation or gift of the property to her sole and separate use. If evidence went to the jury which was not entitled to have any influence upon their decision, the charge of the court carefully guarded them against giving weight to such evidence. The material question of fact, upon which the decision of the case depended, was fairly submitted to the decision of the jury by the charge of the court. It was a question of intention, which it was peculiarly the province of the jury to decide; and we can not say that the court erred in refusing a new trial, on the ground of insufficiency of evidence to warrant the verdict.

The effect ascribed to the instrument of sale or release, of the 20th of March, 1849, might require consideration, if it were not evident that it can have had no influence upon the decision of the jury. That, however, is evident from the consideration that the instrument in question had no application to any of the appellants but Smith, the alleged maker of it. It could not possibly interpose any obstacle to the right of the other appellants to recover in the action; and so the jury were fully and particularly informed by the charge of the court. Their verdict against the other appellants, therefore, renders it evident, beyond a question, that they could not have been influenced in any degree in their finding by the effect claimed for, or ascribed to the instrument. This, doubtless, is the reason why the counsel for the appellants have not thought proper to advert to the instrument in their argument. We think the charge of the court upon the main question

in the case quite as favorable to the appellants, to say the least, as the law would warrant; and, on the whole, we are of opinion that there is no error in the judgment. It is, therefore, affirmed.

Judgment affirmed.

Mr. Justice Bell, having presided as district judge on the trial of this case, did not sit.